WILLIAM P. NUGENT, Chief Clerk Senate
You have forwarded to me 1973 Senate Resolution No. 25, requesting my opinion on Senate Amendment 2 to 1973 Senate Bill 40. The resolution recites that:
 "Whereas, the 1970 clean air act (P.L. 91-604) pertains in part to national air quality standards; and
 "Whereas, the environmental protection agency is apparently prohibited from approving any state air pollution plan that would allow a lower standard of air purity in any area than presently exists there; and
 "Whereas, the senate will soon consider state amendment 2 to 1973 senate bill 40 which would define and apply the phrases `air quality' and `existing ambient air quality' in the context of a state air pollution plan; and
 "Whereas, it is not known whether senate amendment 2 to 1973 senate bill 40 would comply with the mandates of the federal clean air act (P.L. 91-604) in light of the June 11, 1973, per curiam decision by the U.S. supreme court in the case of Robert W. Fri, petitioner, v. Sierra Club, which affirmed a lower court holding that state air pollution plans must now allow a lower standard of purity in any area than presently exists there . . . ."
and asks the following questions:
 "1. Are the definitions and applications of the phrases `air quality' and `existing ambient air quality' adequate to comply with the federal clean air act (P.L. 91-604) as recently construed in federal court decisions?
 "2. Can the definitions and applications of the phrases `air quality' and `existing ambient air quality' be stated in any other *Page 66 
way to better ensure compliance with the federal clean air act (P.L. 91-604)?"
The United States Supreme Court, in the above-mentioned decision, affirmed on a four-to-four vote the decision in SierraClub v. Ruckelshaus (D.C. D.C. 1972), 344 F. Supp. 253, 4 ERC 1205. That case held that the federal Clean Air Act of 1970, P.L. 91-604, 42 U.S.C. § 1857, et seq. (hereinafter referred to as "Clean Air Act"), prohibits states from submitting air pollution control implementation plans pursuant to sec. 110 of the Clean Air Act which allow degradation of existing clean air areas. It appears that the decision in Sierra Club v. Ruckelshaus, supra, constitutes the law as it exists and will exist in the near future.
1973 Senate Bill 40 would grant certain additional authority to the Department of Natural Resources to aid the Department in carrying out its basic air pollution regulation functions under secs. 144.30 to 144.42, Stats., and 144.54, Stats. Senate Amendment 2 to Senate Bill 40 would create several additional sections defining "air quality" and "existing ambient air quality," prohibiting the degradation of existing ambient air quality by the operation of an air contaminant source, and also prohibiting construction of any sources which would degrade existing ambient air quality.
The Clean Air Act of 1970 requires the Federal Environmental Protection Administration to establish certain nationwide air quality standards and to enforce the same. The Act intends, however, that such standards be enforced by the states themselves under approved implementation plans. Such plans may be a combination of express statutory provisions and administrative rule provisions adopted pursuant to statutory authority, as is the implementation plan in Wisconsin. Senate Amendment 2 would have the effect of amending the existing statutory provisions to prohibit the construction or operation of air contaminant sources which would degrade existing ambient air quality. As such, the amendment appears to be consistent with the holding in SierraClub v. Ruckelshaus, supra, which prohibits state implementation plans from permitting degradation of existing clean air areas.
Your question, however, relates more directly to the definitions of two phrases as they appear within Senate Substitute Amendment 2. Your question can only be answered by comparing existing federal *Page 67 
laws, and federal regulations adopted pursuant thereto, to determine if there is any inconsistency between the proposed definitions and any definitions that may be contained in the federal laws and regulations.
The phrase "air quality" is defined in Senate Amendment 2 as follows:
 ". . . `air quality' means scientifically determined and expressed ranges of air conditions ranging from greater to lesser air purity which may be expressed in terms of physical qualities, concentration and duration of contamination and which take into account individual contaminants, the cumulative effect of individual contaminants, atmospheric conditions, geographic location and all other facts bearing on the quality of a given ambient air mass."
I have examined the applicable federal Clean Air Act and regulations adopted pursuant thereto and have found no express definition of the phrase "air quality." However, the phrase is defined by implication through its use in sec. 108 of the Clean Air Act which requires the Administrator of the federal Environmental Protection Administration (EPA) to issue air quality criteria for certain pollutants which, by themselves or in combination with other factors, may affect public health or welfare. Thus, by implication, the phrase "air quality" can be said to be defined in the Clean Air Act as the presence or absence of pollutants in the air.
I can see no inconsistency between that implied definition of the phrase "air quality" and the definition of "air quality" contained in Senate Amendment 2. Although the latter definition refers expressly to particular factors bearing on air quality, such factors are also considered under the Clean Air Act and the regulations adopted pursuant thereto. The proposed state definition would be construed broadly because it uses broad generic language in a statute that is remedial in nature. Furthermore, the operative language of the definition is "scientifically determined in expressed ranges of air conditions ranging from greater to lesser air purity," which appears to be consistent with the definition that may be implied from the Clean Air Act.
The definition of "existing ambient air quality" as it appears in Senate Amendment 2 also lacks an express counterpart in the federal *Page 68 
Clean Air Act and regulations adopted pursuant thereto. The phrase "ambient air" contained within that definition has been defined with identical language in both state and federal regulations applicable under state law and the Clean Air Act. Section NR 154.01 (5), Wis. Adm. Code; 40 CFR, Part 50, sec. 50. 1 (e), 36 FR 22384.
I do see some potential conflict between the definition of "existing ambient air quality," as it appears in Senate Amendment 2 to Senate Bill 40, and the Clean Air Act as it has been construed in the previously mentioned federal court decisions. This is because the definition contained in Senate Amendment 2 would define "existing ambient air quality" as of a date to occur after the effective date of enactment of the law. Under the federal court decisions, the prohibition against degradation of existing air quality has yet to be related to any specific date, but such a date will have to be set in order to establish a base line for carrying out the prohibition against degradation. Such base line date under the federal act could be established as far back as the date of commencement of SierraClub v. Ruekelshaus, supra, or even as early as the date of adoption of the Clean Air Act Amendments of 1970 (P.L. 91-604). In any event, it is unlikely that the base line date for existing air quality under the federal act would be the same as that which would be required to be set under the definition contained in Senate Amendment 2 to Senate Bill 40. TO the extent that they will probably differ significantly, this constitutes a clear potential conflict between the definition of "existing ambient air quality" in the proposed amendment to state law and the definition of "existing air quality" as it may be defined in cases interpreting the Clean Air Act.
Thus, your first question may be answered that the definitions and applications of the phrase "air quality" contained in Senate Amendment 2 is adequate to comply with the federal Clean Air Act as recently construed in federal court decisions, but that the definition of "existing ambient air quality" may not be adequate.
Your second question is whether said definition contained in Senate Amendment 2 to Senate Bill 40 can be stated in any other way to better insure compliance with the federal Clean Air Act. As I have previously determined that the definition of "air quality" under that amendment is adequate, it would be inappropriate for me to suggest any different language. However, with respect to the definition of *Page 69 
"existing ambient air quality" as it is contained in Senate Amendment 2, I would advise that the definition be altered to refer to the air quality that existed when the Department of Natural Resources developed its original implementation plan. I suggest this because portions of the implementation plan which have already been approved by the Environmental Protection Administration would presumably be adequate to support an acceptable nondegradation standard.
RWW:SMS